### 21580. OTTINGER v. PELT.

QUILLIAN, Justice. 1. Where, subsequently to a divorce decree entered in another state, dissolving the marital relations of a minor child's parents, the father agrees that the mother of the child have custody of him during the school months of the years 1961-1962, and there is evidence that the mother is a proper person to be entrusted with the child and that her home is a normal and wholesome place for the rearing of the child, the father is bound by the terms of the agreement. The general rule pronounced in *Milner v. Gatlin,* 139 Ga. 109 (76 SE 860) and *Woodland v. Woodland,* 153 Ga. 202 (111 SE 673) is that, in a contest of parents for custody of a minor child, the decree entered in a court of competent jurisdiction of another state, awarding custody of a child to one of the parents, is conclusive and binding until and unless there is a material change of condition affecting the child's welfare. Hence, if in order to avoid the Tennessee decree, a change of condition was necessary, the contract and change of custody, according to its provisions, and the evidence that the pattern of the father's behavior had deteriorated since the decree is such a change of condition as would support the award of the child to the mother by the judge hearing a habeas corpus case between the child's parents.

2. The controlling question, often very complicated but simply stated, is: what is for the best interest of the child must be done. *Attaway v. Attaway,* 194 Ga. 448 (22 SE2d 50); *Gaughf v. Gaughf,* 214 Ga. 483 (105 SE2d 314). Where the evidence submitted on the trial of a contest for custody of the child, although somewhat in conflict, disclosed that the father was much addicted to strong drink and was a turbulent, vio-

lent person who made dire threats of harm to the mother, and, on occasion, when under the influence of alcohol was given to wild outbursts of temper accompanied by unreasonable demonstrations of violence, it was in the discretion of the trial judge, prudently exercised, to deny him possession of the child.

3. We have not overlooked the earnest contentions of counsel for the plaintiff in error that the lower court's decision failed to give full faith and credit to the Tennessee decree. In our syllabus opinion a foreign decree is placed on equal footing and governed by the same rules as custody decrees from courts in our own State. Such action does not constitute a denial of full faith and credit to the Tennessee decree. *Peeples v. Newman,* 209 Ga. 53, 55 (1) (70 SE2d 749); *Woodland v. Woodland,* 153 Ga. 202, 207, supra.

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 13, 1962—DECIDED APRIL 9, 1962.

*J. N. Johnson,* for plaintiff in error.

*James O. Goggins,* contra.

Robert Joseph Ottinger brought his petition for writ of habeas corpus in the Fulton Superior Court seeking to obtain the custody of his minor child, Joseph Wayne Ottinger, from his former wife, Betty Jo Pelt. The petition alleged that Ottinger had been awarded custody by a Tennessee judgment rendered pursuant to a final divorce decree between the parties; that Ottinger had requested Mrs. Pelt to surrender custody of the child, which she refused to do; that her continued detention of the minor child was unauthorized and illegal. Ottinger prayed that she produce the minor child and that such child's custody be surrendered to him.

Mrs. Pelt filed her answer to the petition denying the material allegations thereof and further alleged: that Ottinger voluntarily relinquished the child to her for the 1961-1962 school year; that afterwards Ottinger had threatened to shoot the respondent and her present husband if they refused to surrender the child; that, at the time of the Tennessee decree, she was unable to support the child, but now she had remarried and had estab-

lished a suitable home; that since the decree Ottinger had become an excessive drinker of beer and intoxicating beverages, and did not provide a proper home for the child; that Ottinger had become irresponsible and left the child with his parents; that the child was kept by Ottinger's mother and that his father also drank to excess, and their home was not a proper place to raise a child; that due to the described changes in circumstances of both parties since the decree the respondent was entitled to custody. Since, it was alleged, Ottinger was not a fit and proper parent, Mrs. Pelt prayed that his relief be denied and that she be awarded permanent custody.

The case came on to be tried on December 11, 1961, evidence being as follows:

Robert Ottinger testified that he had been keeping the child, Joseph Wayne Ottinger, at his parents' home where he spent the weekends although working in a town 50 miles away; that he orally agreed to let Betty Jo Pelt have custody during the school year 1961-1962 provided she would keep him in school and return him to Ottinger on each holiday of over three days duration; that she had failed to return the child.

He further testified that he was drinking no more beer and intoxicating liquors than before the Tennessee divorce decree was entered; that Betty Jo had spent the night with Mr. Pelt before they were married and associated with persons of bad character; that he had made several long distance calls to Betty Jo Pelt concerning taking the child back to Tennessee; that she refused to allow him to have the child back, cursed him, used profane language, and applied vile epithets to him; that on October 22, 1961, he tried to take the child back, but when he asked to see the child permission was refused.

On cross-examination, Ottinger did not remember if he had threatened to shoot the respondent. He stated that one time he went half way to Atlanta but turned back; that he had struck the respondent on occasions, but not since the final decree.

Betty Jo Pelt testified that she and Mr. Pelt had spent the night together prior to their marriage; that when Ottinger phoned her long distance he had threatened to kill her; that she had not taken the child to his father on Labor Day week-

end because her husband was working and she does not drive, and on Thanksgiving because the child was sick on Friday; that she was making $200 per month and Mr. Pelt $240 per month; that the child was making satisfactory progress in school.

Concerning the plaintiff's drinking, Betty Jo Pelt testified that he and his father drank intoxicating beverages to excess, and the plaintiff's father was an alcoholic; that the plaintiff was mean and vicious when drinking and followed her various places making trouble, even after the final divorce decree; that she was afraid of him; that the plaintiff had not provided support for the child since he had been with her; that since the decree Ottinger became enraged while drinking and broke the screen door on his mother's home; that the plaintiff drinks intoxicating beverages more since the final divorce decree than he did during their marriage.

Mrs. Blaine Ottinger, mother of the plaintiff, testified that she had always taken care of the children from the time they were born, and "washed almost every diaper they ever wore." She further testified that her husband is and for some 35 to 40 years had been an alcoholic; that he does not drink any more than he did prior to the divorce of the plaintiff and the respondent; that her son drinks beer mostly and has not drunk any more than he did before the divorce; that her son earned $115 per week and gave her $10 per week for the support of the children; that her son roomed 50 miles from her home, but came home on week-ends and practically every Tuesday night; that she did not remember her son breaking a screen door after the divorce decree.

Admitted into evidence was a properly certified copy of the order of the Circuit Court of Cocke County, Tennessee, of March 31, 1960, awarding the children of their marriage to Ottinger, according to a prior agreement, with custody rights to Mrs. Pelt when he was out of the state. The Tennessee court further undertook to retain jurisdiction by a provision in the order which reads: "This cause will be retained on the docket for such orders and decrees as may be necessary in the future relative to the custody and welfare of the children."

At the conclusion of the evidence and the argument of coun-

sel, the trial judge issued an order directing that custody of the minor child be awarded to Mrs. Betty Jo Pelt and that Mr. Ottinger have custody during the summer months and for all school holidays of over three days duration. To such ruling counsel for Ottinger excepted and assigns error upon the ground that it was contrary to law in that it failed to give full faith and credit to the Tennessee decree; that it changed custody of the minor child without proof of a material change of circumstances substantially affecting the welfare and best interest of the minor child; and that the Tennessee decree was res judicata between the parties to that suit, thereby precluding Mrs. Pelt from contesting such issues.